Filed 9/30/16  Harrell v. Hanson CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

PETER T. HARRELL,

       Plaintiff and Appellant,

      v.

MICHELE HANSON et al.,

       Defendants and Respondents.

C078371, C079103

(Super. Ct. No. SCSCCVPT14671)

    In these consolidated appeals, Peter T. Harrell challenges an order and amended order granting a special motion to strike under Code of Civil Procedure section 425.16 (anti-SLAPP motion) filed by defendants Michele Hanson, Patricia Brown, and Sharrel Barnes.[1]  Harrell filed a petition for writ of mandate against defendants as individuals and

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.  Motions brought under section 425.16 are directed against SLAPP (strategic lawsuit against public

1

as directors of the Hornbrook Community Services District (District).[2]   The District, which supplies water to an unincorporated town in the County of Siskiyou, was not named as a defendant.

The caption of Harrell's petition alleges violations of the Ralph M. Brown Act (the Brown Act) (Gov. Code, § 54950 et seq.), violation of District bylaws, and breach of fiduciary duties.  Based on these allegations, the petition seeks declaratory and injunctive relief to compel the District's directors to comply with the Brown Act's requirement of noticed and open meetings; to prevent the District's directors from usurping duties and prerogatives assigned by the Government Code to a general manager; to compel District directors to comply with Water Code provisions for appointment of a general manager; and to require the directors to comply with the District's bylaws.

The trial court issued an order granting the defendants' anti-SLAPP motion as to all causes of action except the alleged violation of the Brown Act.  Harrell timely filed a notice of appeal.  Thereafter, the trial court entered an amended order purporting to clarify which portions of the petition were stricken in response to the anti-SLAPP motion.  Harrell filed a notice of appeal from the amended order.  We consolidated the appeals.

---

participation) cases.  (*Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 57, fn. 1 (*Equilon*).)

[2]     On grounds Harrell filed a "petition for writ of mandate and prohibition, also titled a complaint," the trial court referred to the operative pleading as a complaint.  However, we refer to the operative pleading as a petition because Harrell complied with the Government Code requirement that the action be filed as a petition for a writ of mandate. Subdivision (c) of Government Code section 61006 provides:  "Any judicial action to compel performance of an action by a district, its officers, or its directors shall be brought pursuant to Section 1084 of the Code of Civil Procedure."

In case No. C078371, Harrell contends (1) the trial court "failed to properly analyze the pleadings," (2) the anti-SLAPP motion was erroneously granted "on the basis of discretionary immunity," (3) his petition did not concern "acts of discretion," (4) the trial court erred in concluding Harrell's petition was not brought in the public interest, and (5) the trial court should not have awarded attorney fees to the defendants. In case No. C079103, Harrell argues the trial court acted in excess of its jurisdiction by entering an amended order after he filed his first notice of appeal. The defendants argue for dismissal of case No. C078371 on grounds the notice of appeal was defective and the case has become moot now that the defendants are no longer District directors.

We determine Harrell's notice of appeal in case No. C078371 is not defective and the case is not moot. In case No. C079103, we conclude the trial court did not have jurisdiction to amend an order from which an appeal had already been taken. Consequently, we reverse the void amended order.

On the merits in case No. C078371, we conclude the anti-SLAPP statute does not apply because Harrell's claims rely on the defendants' communications as evidence of their alleged violations of the Government and Water Codes and failure to follow the District's bylaws. Rather than chilling protected speech, the petition seeks to compel the District directors' compliance with applicable statutes and bylaws. Accordingly, we reverse the trial court's granting of the anti-SLAPP motion.

## BACKGROUND

### *Case No. C078371*

In June 2014, Harrell filed a petition for writ of mandate that alleged: The District is a governmental entity organized for the sole purpose of operating water-producing facilities. Harrell was acting general manager of the District as well as a recipient of water from the District. Hanson, Brown, and Barnes were members of the board of

3

directors for the District. In addition, Hanson served as president and Barnes as vice president of the District. Hanson had previously been secretary of the board, and in that capacity she had taken "one large filing cabinet full of documents, and several crates of additional documents to her home, where many of these documents are currently stored." After resigning as secretary, Hanson refused to return most of these documents to the District or to Harrell.

Harrell further alleged Hanson and Brown engaged in multiple meetings, from April 1, 2014 to May 31, 2014, at Hanson's residence where they planned how they would vote on District business. Barnes joined these discussions during the latter part of this period. During the period between April 18, 2014 and May 31, 2014, the defendants made multiple statements they would refuse to appoint a general manager for the District and themselves exercise the authority given to a general manager in violation of: Government Code sections 61050 and 61051; Water Code section 71340 and 71362; and the District's bylaws. Defendants interfered with Harrell's duties as acting general manager by blocking his access to customer account information; preventing him from overseeing the finances and bookkeeper for the District; preventing him from collecting overdue fees; and from enforcing applicable statutes and bylaw provisions.

Harrell's petition asserted defendants ignored the applicable statutes and bylaw provisions "in order to financially benefit their friends and acquaintances" by waiving fees, adjusting accounts, ignoring overdue accounts, failing to impose late fees and liens, refusing to shut off water on overdue accounts, and circumventing the District's procedures.

Based on these allegations, Harrell's petition asserted a private right of action under the District's bylaws. He also sought declaratory relief as to the validity of defendants' actions and his rights to execute his duties as the District's acting general

4

manager. Harrell asserted prompt declaratory relief would avoid the "imminent danger of water system failure due to the nonfeasance and malfeasance of the Defendants in actually operating the water system, and acting . . . to thwart the lawful and proper functioning of the District's administrative and executive officers . . . ." In the caption of the petition, Harrell also asserts causes of action for violation of the Brown Act, breach of fiduciary duty, and for injunctive relief.

Defendants responded to the petition by filing an anti-SLAPP motion on grounds the petition focused on defendants' right to free speech in connection with a public issue.[3] Arguing plaintiff's petition could not withstand demurrer, defendants' anti-SLAPP motion included assertions Harrell lacked standing, asserted the petition failed to state a cause of action, and was vague. In support of the motion, defendants introduced a declaration by Hanson stating Harrell had been removed from his position as volunteer general manager for the district, he was neither a resident nor property owner within the district, the lawsuit was an attempt by Harrell to intimidate the defendants into voting in his favor, and his action was related to one brought by his friend, Kimberly Olson, who had been fired for embezzling district funds. Defendants also introduced a separate declaration by Hanson in which she stated she had never conducted or attended a meeting in violation of the Brown Act.

Harrell filed a reply to the opposition and a supporting declaration by Olson. Olson's declaration stated she had served on the board of directors and as the district's secretary beginning in January 14, 2014, Harrell owned property within the District, she was at Hanson's residence on several occasions when the defendants discussed District

---

[3]    Defendants do not argue Harrell's petition chills their right of petition but only their rights to speech.

5

business, and "Hansen and Brown both recognized that these sorts of discussions and meetings violated the Brown Act, but that they were going to talk about it anyway, because they 'didn't care' what the law said." Olson further declared Hanson, Brown, and Barnes voted to implement the plans made at the private meetings. And Olson's declaration stated the District was not engaging in proper bookkeeping and was not taking in enough in fees to continue operating the water supply services.

The trial court granted the defendants' anti-SLAPP motion as to all causes of action except for claimed violations of the Brown Act. The trial court reasoned the petition arose out of protected speech because all of the allegations in Harrell's petition related to speech by the defendants -- except for the assertion Hanson refused to return District documents. Concluding none of the speech was per se illegal -- such as criminal threats or extortion -- the anti-SLAPP statute applied and required dismissal. The trial court found Harrell failed to establish a probability of prevailing on the merits because the bylaws referenced in the petition had been repealed, the petition failed to state a cause of action (other than violations of the Brown Act), and defendants had legislative immunity under Government Code section 820.2. In the same order granting defendants' anti-SLAPP motion, the trial court determined defendants were entitled to their attorney fees. On January 27, 2015, Harrell timely filed a notice of appeal.

### Case No. C079103

After Harrell filed his notice of appeal, the defendants filed a proposed order to clarify the trial court's granting of the anti-SLAPP motion. On February 17, 2016, Harrell filed an objection to the proposed order. The objection was based, in part, on Harrell's argument the trial court had not directed the further preparation of a final written order, and the trial court had lost jurisdiction over the matter after he filed his notice of appeal. In response, the defendants acknowledged the trial court's order

6

granting the anti-SLAPP motion did not direct preparation of a further order but asserted the California Rules of Court nonetheless allowed for an amended order to be entered. The defendants further argued Harrell's notice of appeal had been premature.

The trial court adopted its earlier findings and entered an "amended order granting special motion to strike" in which it identified specific paragraphs and phrases in the petition that were deemed stricken. The trial court's amended order states it "revises the one entered on February 25, 2015, and reflects the rulings, on March 19, 2015, by Judge Dixon, on plaintiff Harrell's [objection] as to the original order."[4] Harrell filed a notice appeal from the amended order.

## DISCUSSION

## I

### *Sufficiency of Harrell's First Notice of Appeal*

Defendants argue Harrell filed a defective notice of appeal in case No. C078371 because he did not identify the appellant nor did he specify the date or name of the order being appealed. We reject the argument.

California Rules of Court, rule 8.100(a)(2) provides in pertinent part: "The notice of appeal must be liberally construed. The notice is sufficient if it identifies the particular judgment or order being appealed." The liberal construction rule reflects the " 'strong public policy in favor of hearing appeals on the merits' " (*Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal.App.4th 612, 624.) Thus, an appeal will be allowed if the grounds for appeal are reasonably clear and the respondent is unlikely to have been confused or misled by the notice of appeal. (*Ibid.*) For example, even when a notice

---

**4**      Although the March 19, 2015 rulings are not part of the record, their omission does not affect our analysis.

7

of appeal omits the date of the order or judgment being appealed, the notice " 'can be interpreted to apply to an existing appealable order or judgment, if no prejudice would accrue to the respondent.' " (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 20.) "In determining whether a respondent has been misled by errors on the face of the notice of appeal, a reviewing court may consider the contents of the designation of record . . . ." (*D'Avola v. Anderson* (1996) 47 Cal.App.4th 358, 362.)

In case No. C078371, we conclude Harrell gave adequate notice of appeal. Harrell's notice of appeal identifies himself as the party filing the document. A party who files a notice of appeal is an appellant seeking to challenge the appealable order or judgment. Consequently, we reject defendants' assertion Harrell failed to state the name of the appellant. We also reject defendants' contentions the notice of appeal failed to adequately identify the anti-SLAPP order. Although the notice of appeal does not give the date on which the challenged order was entered, it states it is a "SLAPP motion appeal -- CCP 425.16(j)." And Harrell's designation of the record includes exactly one appealable order: the trial court's order granting the anti-SLAPP motion.

Defendants' argument does not show any confusion about the nature of Harrell's appeal -- seeking instead to defeat the appeal based on technical shortcomings in the notice of appeal. Under the liberal construction rule, we conclude Harrell's notice of appeal sufficed to make defendants aware of his appeal and the particular ruling he sought to challenge.

## II

### *Mootness*

Defendants also urge us to dismiss the case on grounds this case has become moot because they are no longer District directors. In support of the assertion of mootness,

8

defendants offer no legal authority nor do they develop any analysis.  We consider the assertion nonetheless because this court may decide only cases that are justiciable. (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573 (*Wilson*).)

"The concept of justiciability is a tenet of common law jurisprudence and embodies '[t]he principle that courts will not entertain an action which is not founded on an actual controversy. . . .' (*California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 22 (*California Water*); see also *Stonehouse Homes v. City of Sierra Madre* (2008) 167 Cal.App.4th 531, 540 (*Stonehouse Homes*).) Justiciability thus 'involves the intertwined criteria of ripeness and standing.  A controversy is "ripe" when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' (*California Water*, at p. 22, fn. omitted.)  But 'ripeness is not a static state' (*Consumer Cause, Inc. v. Johnson & Johnson* (2005) 132 Cal.App.4th 1175, 1183), and a case that presents a true controversy at its inception becomes moot ' "if before decision it has, through act of the parties or other cause, occurring after the commencement of the action, lost that essential character." ' (*Wilson v. L.A. County Civil Service Com.* (1952) 112 Cal.App.2d 450, 453)." (*Wilson, supra,* 191 Cal.App.4th at p. 1573.)  An appeal is moot when a decision of "the reviewing court 'can have no practical impact or provide the parties effectual relief.' " (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214.)

The practical impact and public importance of issues presented in a case may compel review on the merits even of a technically moot case.  An illustrative example is found in the California Supreme Court's decision in *Madera County v. Gendron* (1963) 59 Cal.2d 798 (*Madera County*).  *Madera County* involved an action for declaratory

9

relief concerning the issues of whether a statute that prohibited the district attorney of Madera County from concurrently engaging in private practice of law, and whether the county could lawfully withhold his salary during the time he served as both district attorney and private counsel. (*Id.* at p. 800.) The Supreme Court held the statute was valid but the county could not withhold the district attorney's salary. (*Ibid.*) The *Madera County* court reached the merits of the case even though the defendant in the case had been defeated for reelection and the holding had no effect on him. (*Id.* at pp. 803-804.) As the Supreme Court explained, "A determination of the instant question affects the defendant's successors in office as well as the district attorneys of other counties who serve under similar statutory disabilities. The certainty afforded by appellate resolution of this question is preferable to the uncertainty we would engender in Madera and other counties by failure to resolve the issue." (*Id.* at p. 804.)

The rationale of *Madera County, supra,* 59 Cal.2d 798 applies here where a decision on Harrell's claims of Government Code and Water Code violations in the operation of the District would provide guidance to defendants' successors as District directors. Notably, there are no published decisions construing Government Code sections 61050 or 61051 or interpreting Water Code section 71340 and 71362.**5**

---

**5**      Government Code section 61050, subdivision (a), requires: "The board of directors shall appoint a general manager." Government Code section 61051 provides that "[t]he general manager shall be responsible for all of the following: [¶] (a) The implementation of the policies established by the board of directors for the operation of the district. [¶] (b) The appointment, supervision, discipline, and dismissal of the district's employees, consistent with the employee relations system established by the board of directors. [¶] (c) The supervision of the district's facilities and services. [¶] (d) The supervision of the district's finances."

10

Moreover, Harrell's claim for damages arising out of his tort allegations is not negated by the defendants' leaving their offices as District directors. Consequently, the appeal is not moot insofar as Harrell seeks damages for past tortious conduct. Moreover, the appeal addresses issues of public importance regarding the proper operation of community districts. For these reasons, we reject defendants' assertion of mootness and consider the merits in case No. C078371.

### III

### *Jurisdiction to Amend the Previously Entered anti-SLAPP Order*

After Harrell filed his first notice of appeal from the order granting defendants' anti-SLAPP motion, the trial court entered an "amended order granting special motion to strike" in which it specified paragraphs and phrases in Harrell's petition that were deemed stricken. In this manner the trial court purported to change an order from which an appeal had been taken. On appeal, Harrell argues the trial court lacked jurisdiction to modify its initial order. We agree.

The trial court's initial order granting the defendants' anti-SLAPP motion concluded: "**ORDER:** [¶] The defendants' motion to strike the Complaint is granted except as to the cause of action for violation of the Brown Act. Attorney fees are awarded to the defendants upon separate motion. The defendants are ordered to demur[]

---

Water Code section 71340 provides in pertinent part that, for a water district, "the board shall appoint, by a majority vote, a secretary, treasurer, attorney, general manager, and auditor, and shall define their duties and fix their compensation." Water Code section 71362 provides: "Subject to the approval of the Board of Directors, the general manager shall have full charge and control of the maintenance, operation, and construction of the waterworks or waterworks system of the district, with full power and authority to employ and discharge all employees and assistants, other than those referred to in Section 71340, at pleasure, prescribe their duties, and fix their compensation."

11

or answer to the remaining causes of action within 15 days of mailing of this order." From this order, Harrell filed his first notice of appeal.

The next day, defendants submitted a proposed amended order regarding the same anti-SLAPP motion. Ultimately, the trial court entered an amended order granting the anti-SLAPP motion. From the amended order, Harrell filed his second notice of appeal.

An order granting an anti-SLAPP motion can be appealed unless it directs that a formal written order be prepared, signed, and filed. (Rule 8.104(c)(2); *Koshak v. Malek* (2011) 200 Cal.App.4th 1540, 1545; § 904.1, subd. (a)(13).) Once an appeal has been filed, section 916, subdivision (a), provides, in pertinent part, that "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order."

" 'As a general rule, a duly perfected appeal divests the trial court of further jurisdiction in the cause except with respect to collateral matters [such as a motion for new trial]." [Citations.] After perfection of an appeal, the trial court 'may not vacate *or amend a judgment or order valid on its face*, or do any other act which would affect the rights of the parties or the condition of the subject matter.' [Citation.]" (*Laidlaw Waste Systems, Inc. v. Bay Cities Services, Inc*. (1996) 43 Cal.App.4th 630, 641, fn. omitted and italics added.) "The purpose of the rule depriving the trial court of jurisdiction in a case during a pending appeal is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The rule prevents the trial court from rendering an appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it." (*Betz v. Pankow* (1993) 16 Cal.App.4th 931, 938.) As a result, "[t]he

trial court's power to enforce, vacate or modify an appealed judgment or order is suspended while the appeal is pending." (*Elsea v. Saberi* (1992) 4 Cal.App.4th 625, 629.) "And any 'proceedings taken after the notice of appeal was filed are a nullity.' [Citations.] *This is true even if the subsequent proceedings cure any purported defect in the judgment or order appealed from*." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 197–198 (*Varian*), italics added.)

Here, the defendants sought to amend the order granting the anti-SLAPP motion after Harrell filed a notice of appeal from the order. The trial court's entry of the amended order purported to substantively affect the already-entered order by identifying specific paragraphs and phrases in the petition to be stricken. However, the trial court lacked jurisdiction to substantively change the order being appealed. (*Elsea v. Saberi, supra*, 4 Cal.App.4th at p. 629.) As a result, the amended order is void and must be reversed. (*Varian*, *supra*, 35 Cal.4th at p. 198; *Rochin v. Pat Johnson Manufacturing Co*. (1998) 67 Cal.App.4th 1228, 1240 [reversing a void judgment entered in excess of jurisdiction].)

## IV

### *Anti-SLAPP*

Harrell contends the trial court erred in granting defendants' anti-SLAPP motion on grounds his petition chilled their rights of speech and he had not shown a probability of prevailing. We conclude Harrell's claims do not implicate defendants' protected rights of free speech.

### A.

### *Review*

"In anti-SLAPP analysis, we accept as true [the petitioner's] pleaded facts." (*Young v. Tri-City Healthcare Dist*. (2012) 210 Cal.App.4th 35, 54 (*Young*).) However,

13

we exercise our independent judgment in assessing the trial court's legal analysis in granting the anti-SLAPP motion. "Appellate review of a trial court's ruling on an anti-SLAPP motion is de novo. (*United States Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton LLP* (2009) 171 Cal.App.4th 1617, 1625.) 'Thus, [appellate] review is conducted in the same manner as the trial court in considering an anti-SLAPP motion.' (*Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1016.)" (*Summit Bank v. Rogers* (2012) 206 Cal.App.4th 669, 681.)

**B.**

### *Section 425.16*

Section 425.16 sets forth the requirements for striking causes of action intended to chill the rights of speech or petition. As the California Supreme Court has explained, "Section 425.16 posits . . . a two-step process for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. (§ 425.16, subd. (b)(1).) 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e).' (*Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1043). If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (§ 425.16, subd. (b)(1); see generally *Equilon, supra,* 29 Cal.4th at p. 67.)" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.) Thus, " '[o]nly a cause of action that satisfies both prongs of the anti-SLAPP statute-i.e., that arises from protected speech or petitioning and lacks even minimal merit-is a SLAPP, subject to being stricken under the statute.' [Citation.]" (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 645.)

In considering an anti-SLAPP motion, the trial court must determine whether " 'the gravamen or principal thrust' of the action" targets protected activity. (*In re Episcopal Church Cases* (2009) 45 Cal.4th 467, 477.) "Where . . . a cause of action is based on both protected activity and unprotected activity, it is subject to section 425.16 ' "unless the protected conduct is 'merely incidental' to the unprotected conduct." ' (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672 (*Peregrine Funding*) [first prong of SLAPP analysis met where the allegations of loss resulting from protected activity were not merely incidental or collateral to unprotected activity]; see *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 104 (*Mann*) [because the defendants' reports to government agencies formed a substantial part of the factual basis for defamation and trade libel claims, the claims were subject to the SLAPP statute even though also based on nonprotected statements].)" (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1550-1551.)

The corollary to the gravamen of the complaint test is that "a defendant in an ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant. (See *Paul v. Friedman* [(2002)] 95 Cal.App.4th [853,] 866 ['[t]he statute does not accord anti-SLAPP protection to suits arising from any act having any connection, however remote, with an official proceeding'].)" (*Martinez v. Metabolife Intern., Inc.* (2003) 113 Cal.App.4th 181, 188.) "In deciding whether an action is a SLAPP, the trial court should distinguish between (1) speech or petitioning activity that is mere *evidence* related to liability and (2) liability that is *based on* speech or petitioning activity. . . . An anti-SLAPP motion should be granted if liability is based on speech or petitioning activity

15

itself." (*Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1214-1415 (*Graffiti Protective Coatings*).)

*Graffiti Protective Coatings* involved a petition for writ of mandate by a company (GPC) that sued to invalidate a contract between the City of Pico Rivera and National Environmental Services to clean the city's bus stops. (181 Cal.App.4th at pp. 1211-1212.) GPC, which had previously performed the bus stop cleanings, brought the action after the city terminated its contract and awarded a new contract without inviting competitive bids. (*Id.* at p. 1211.) In support of its writ petition, GPC introduced evidence National Environmental Services had told a GPC employee GPC's contract would be terminated a month before the city notified GPC its contract would not be renewed. (*Id.* at p. 1212.) GPC also introduced evidence it had called the city's director of public works several times to check on the status of the original contract's extension and had received assurances that "GPC was the best contractor for bus stop maintenance." (*Ibid.*) Nonetheless, several weeks later a new contract was given to National Environmental Services. (*Ibid.*)

GPC's writ petition, among other things, sought declaratory relief by requesting the new contract be declared void and to compel the city to award the contract based on competitive bidding. (*Graffiti Protective Coatings, supra,* 181 Cal.App.4th at p. 1213.) The city filed an anti-SLAPP motion on grounds the claims were based on communications between GPC, GPC's employee, National Environmental Services, "and the public regarding the maintenance of the City's bus stops." (*Ibid.*) The trial court granted the anti-SLAPP motion on grounds GPC's claims were based on the city's right of speech on matters of public interest and GPC was not likely to prevail on the merits of its claims. (*Id.* at p. 1214.)

16

The *Graffiti Protective Coatings* court reversed and explained: "Here, the prelitigation communications between the City and others are helpful in establishing the events leading up to the termination of GPC's contract. The communications assist in telling the story. But GPC's claims against the City are not based on those communications. Rather, liability is premised on state and municipal laws requiring the City to award certain contracts through competitive bidding. A petition for a writ of mandate and a request for declaratory relief, as set forth in the complaint, are appropriate means to determine whether the City complied with those laws. To conclude that GPC's claims are subject to the anti-SLAPP statute would require GPC to demonstrate a probability of prevailing on the merits at the pleading stage, a result that would discourage attempts to compel public entities to act lawfully." (*Graffiti Protective Coatings*, *supra*, 181 Cal.App.4th at p. 1215.) The appellate court further explained GPC's claims "are not based on any statement, writing, or conduct by the City in furtherance of its right of free speech or its right to petition the government for the redress of grievances. Rather, plaintiff's claims are based on state and municipal laws requiring the City to award certain contracts through competitive bidding. Thus, the claims are not subject to the anti-SLAPP statute." (*Id.* at p. 1211.)

A similar result was reached in *Young, supra,* 210 Cal.App.4th 35. *Young* involved a petition for administrative mandate filed by a doctor to challenge the decision of the board of directors of a healthcare district to terminate his medical staff privileges at its hospital. (*Id.* at p. 39.) The doctor's petition recited conflicts he had experienced with his colleagues and the board of directors. (*Id.* at p. 43.) The petition sought relief for procedural violations in the process of terminating his hospital privileges. (*Id.* at p. 44.) The healthcare district filed an anti-SLAPP motion to the cause of action in which the doctor sought a determination his suspension "was unjustified, based on improper review

17

of his records, carried out by unqualified committees, and unsupported by substantial evidence . . . ." (*Ibid.*) The trial court granted the anti-SLAPP motion, and the Court of Appeal reversed. (*Id.* at p. 59.)

In reversing the anti-SLAPP motion, the *Young* court noted that " '[e]ven if the conduct of individual public officials in discussing and voting on a public entity's action or decision could constitute an exercise of rights protected under the anti-SLAPP statute[,] . . . this does not mean . . . litigation challenging a public entity's action or decision always arises from protected activity.' (*San Ramon* [*Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Ass'n* (2004)] , 346–347 (*San Ramon*).) An act of governance mandated by law, without more, is not an exercise of free speech or petition." (*Young*, *supra*, 210 Cal.App.4th at p. 56.)

The *Young* court further reasoned it is an "important public policy concern that the anti-SLAPP statute should not be interpreted in a manner that 'would significantly burden the petition rights of those seeking mandamus review for most types of governmental action. Many of the public entity decisions reviewable by mandamus or administrative mandamus are arrived at after discussion and a vote at a public meeting. . . . If mandamus petitions challenging decisions reached in this manner were routinely subject to a special motion to strike . . . it would chill the resort to legitimate judicial oversight over potential abuses of legislative and administrative power, which is at the heart of those remedial statutes. It would also ironically impose an undue burden upon the very right of petition for those seeking mandamus review in a manner squarely contrary to the underlying legislative intent behind [the anti-SLAPP statute]." (*Young*, *supra*, 210 Cal.App.4th at p. 56, quoting *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 357–358 (*San Ramon*).)

## C.

### *Harrell's Petition Does Not Arise Out of Protected Activity*

We conclude the anti-SLAPP statute does not apply to Harrell's claims because they do not seek to abridge defendants' rights of free speech. Although Harrell's petition alleges numerous instances of communications by defendants, the reference to their speech is offered as evidence of violations of the Government Code, Water Code, and the District's bylaws. In his petition, Harrell seeks to compel the District's directors to comply with the Brown Act's requirement of noticed and open meetings; to prevent the District's directors from usurping duties and prerogatives assigned by the Government Code to a general manager; to compel District directors to comply with Water Code provisions for appointment of a general manager; and to require the directors to comply with the District's bylaws. Harrell's petition also seeks tort damages for damages alleged to derive from the District directors' failure to comply with applicable statutes and bylaw provisions. In short, Harrell relies on communications as evidence of his claims rather than seeking to impose liability based on the defendants' speech.

The trial court erred in reasoning the anti-SLAPP statute applies because Harrell's petition does not concern speech that is inherently unlawful -- such as with criminal threats or extortion. (See, e.g., Pen. Code, §§ 422 [criminal threats], 518 [extortion].) This rationale would have the effect of preventing attempts to compel public entities to act lawfully because evidence reliant on speech would be unavailable to prove such claims. The anti-SLAPP statute is not meant to discourage actions to enforce statutes and rules applicable to governmental agencies but only to prevent frivolous actions intended to chill the rights of speech or petition. (*Graffiti Protective Coatings*, *supra*, 181 Cal.App.4th at pp. 1217-1218.) Although the defendants' communications serve as evidence of Harrell's claims, his petition is premised on the defendants' alleged

violations of the Government and Water Codes as well as the bylaws of the District. In *Graffiti Protective Coatings*, the court held that "the *substance* of the Board's action does not constitute the exercise of the Board's right of speech or petition." (181 Cal.App.4th at p. 1219, quoting *San Ramon*, *supra*, 125 Cal.App.4th at p. 355.) Likewise, in this case, the substance of the defendants' actions that allegedly violated Government and Water Code statutes in addition to District bylaws does not implicate the right of free speech. Consequently, the order granting the defendants' anti-SLAPP motion is reversed.[6]

## V

### *Attorney Fees*

Harrell challenges the award of attorney fees to defendants in the trial court's order granting of the anti-SLAPP motion. The trial court's error in granting the anti-SLAPP motion also requires reversal of the award of fees awarded under section 425.16. (*Panakosta Partners, LP v. Hammer Lane Management, LLC* (2011) 199 Cal.App.4th 612, 639.)

## DISPOSITION

In case No. C078371, the order granting the anti-SLAPP motion of defendants Michele Hanson, Patricia Brown, and Sharrel Barnes, including the award of attorney fees, is reversed. In case No. C079103, the void amended order is reversed. Peter T.

---

[6] Our conclusion Harrell's petition does not implicate defendants' rights of free speech obviates the need to consider the second prong of the anti-SLAPP analysis, namely whether Harrell has demonstrated a likelihood of prevailing on the merits. (*Graffiti Protective Coatings, supra,* 181 Cal.App.4th at p. 1211.) For the same reason, we also express no opinion on the merits or sufficiency of Harrell's pleaded causes of action.

20

Harrell shall recover his costs in both appeals.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/s/

HOCH, J.

We concur:

/s/

RAYE, P. J.

/s/

MAURO, J.